
UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| PROJECT HAWKEYE, LLC, AS THE ASSIGNEE OF CAMPBELL COUNTY WIND FARM, LLC;<br><br>Plaintiff,<br><br>vs.<br><br>WINDLOGICS, INC.,<br><br>Defendant. | 1:16-CV-01052-CBK<br><br><br>ORDER |

## BACKGROUND

Plaintiff Project Hawkeye, LLC ("Project Hawkeye"), as the assignee of Campbell County Wind Farm, LLC ("CCWF"), filed suit against WindLogics, Inc. ("WindLogics") to recover damages incurred by CCWF as a result of WindLogics' alleged breach of contract to provide design services for CCWF's windfarm project in Campbell County, South Dakota. These are the "Parties." Project Hawkeye claims that WindLogics breached its requirement under the contract to site wind turbine towers in accordance with applicable setback restrictions, including SDCL 43-13-24, which requires wind turbine towers to be set back 500 feet or 1.1 times the height of the tower from any surrounding property line, absent an agreement otherwise with the property owner. The Parties are properly before this Court pursuant to 28 U.S.C. § 1332. The contract is governed by Florida law, as agreed.

Both Parties moved for summary judgment regarding the interpretation of the indemnity and limitation of liability clauses in the contract. Project Hawkeye moved for partial summary

judgment to request this Court to hold that the losses alleged in its complaint (1) either fall within the coverage of the indemnity clause or that the indemnity clause is ambiguous and should be interpreted against the drafter and (2) that the limitation of liability clause is either inapplicable or ambiguous and therefore unenforceable. Defendant filed a cross-motion for summary judgment requesting the Court to hold that (1) the damages plaintiff requests do not fall within the indemnification clause and (2) the limitation of liability clause excludes liability for consequential damages sought by the plaintiff.

As this Court will be required to engage in a detailed reading of the indemnity and limitation of liability clauses in the contract, these clauses are set forth in full:

> 5. <u>Indemnity</u>. Customer shall, at its sole expense, defend, indemnify and hold WINDLOGICS, FPL Group, Inc., its affiliates, and their respective officers, employees, directors [sic] shareholders, members and agents harmless from and against liability or loss, including all reasonable costs, expenses and attorneys' fees, claims, suits or judgments in connection with alleged infringements of patens [sic], registered copyrighted or unregistered copyrighted works, trade secrets, patented or un-patented inventions, articles or appliances, or claims thereof pertaining to any materials, data, documentation, or equipment, or any parts or combinations thereof, provided hereunder to WINDLOGICS to facilitate WINDLOGICS's provision of Services. WINDLOGICS shall, at its sole expense, defend, indemnify and hold Customer harmless from and against liability or loss, including all reasonable costs, expenses, and attorneys' fees, claims, suits or judgments in connection with alleged infringements of patens [sic], registered copyrighted or unregistered copyrighted works, trade secrets, patented or un-patented inventions, articles or appliances, or claims thereof pertaining to WINDLOGICS's provision of Services or any deliverable related thereto.
>
> 6. <u>Limitation of Liability</u>. Except for indemnity obligations under this Agreement, neither Party shall be liable to the other Party for special, indirect, consequential or punitive damages, even if the Party has been advised that such damages are possible. Except for indemnity obligations under this Agreement, in no event shall WINDLOGICS's total aggregate liability exceed the Price set for [sic] in Section 3.1 for the Services.

2

**DECISION**

**I. Standard of Review**

A motion for summary judgment is appropriate to resolve disputes involving the interpretation of unambiguous contracts. Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 623 (8th Cir. 1981) (internal citations omitted). Summary judgment should be granted only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment is to determine whether there is a "genuine issue for trial" with regard to a claim or defense or "part of each claim or defense." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); and Fed. R. Civ. P. 56(a). If facts are disputed, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where the motion for summary judgment concerns issues that are "primarily legal rather than factual," summary judgment is "particularly appropriate." Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995). Summary judgment may be granted for resolution of contract terms "if the 'documents supporting the Rule 56 motion are undisputed and reveal that there is no question as to intent.'" Lillibridge v. Nautilus Ins. Co., 2013 WL 870439, *4 (D.S.D. 2013) (*quoting* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURES § 2730.1 at 61 (3d ed. 1998)). The preliminary question of whether a contractual provision is ambiguous is a matter of law and therefore suitable for summary resolution by the court; however, if a provision is found to be ambiguous, summary judgment should not be granted where "issues are presented involving an inquiry into the state of mind of any of the contracting parties." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND

3

PROCEDURES § 2730.1 at 61 (3d ed. 1998). That is, summary judgment should not be granted if the intent of the parties is in question.

This Court notes that the provisions at issue are contained in a contract negotiated between two sophisticated business entities, rather than a contract between consumer and provider or an adhesion contract. Contract clauses that limit, as in the instant case, a "design professionals' liability, 'once considered unprofessional,' are today 'a fact of everyday business and commercial life.'" Buck S. Beltzer & Melissa A. Orien, *Are Courts Limiting Design Professionals' Ability to Limit Liability?* 30 CONSTRUCTION LAWYER 17 (Spring 2010). Limitation of liability clauses are not, as the Parties' motions suggest, identical to exculpatory clauses; the former limits the amount of damages that may be recovered for a party's negligent acts, while the latter exonerates a party from its negligent conduct. The enforceability of either the limitation of liability clause or indemnity clause does not render the remaining clause unenforceable: the contract also contains a severability provision, such that a defect in "one or more phrases, sentences, clauses or sections" contained in the contract does not invalidate "the remaining portions thereof." Severability clauses are enforceable as a general rule. *See, e.g.,* Fonte v. AT&T Wireless Services, Inc., 903 So.2d 1019, 1024 (Fla. 4th DCA 2005).

At the crux of the Parties' dispute is the nature of the damages that plaintiff seeks. Plaintiff's Complaint requests "(A) Damages sufficient to compensate plaintiff for the losses it incurred; (B) Its costs and disbursements incurred herein, including reasonable attorney's fees; and (C) Such other and further relief as the Court deems just and proper under the circumstances." Plaintiff's Complaint also states that "Project Hawkeye paid confidential amounts of consideration" to secure consent for the placement of wind turbine towers and that "[a]s a result of WindLogics' breach of the parties' contract and negligence in failing to design

the wind farm . . . Project Hawkeye incurred liability and losses for which it is entitled to indemnity." The right to indemnity arises as the result of "an agreement by which the promisor agrees to protect the promisee against loss or damages because of liability to a third party." Rachel M. Kane, 12 FLA. JUR 2D CONTRIBUTION, ETC. § 37 (February 2018) (*citing* Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638 (Fla. 1999)). The damages plaintiff seeks for payments made to third parties to secure consent for the placement of the wind tower turbines, then, may properly be encompassed by an indemnity provision in the contract. The damages may also be characterized as consequential damages, as they "do not flow directly and immediately from an injurious act" but "result indirectly from the act." *Damages*, BLACK'S LAW DICTIONARY (10th Ed. 2014).

## II. The Limitation of Liability Clause

The Court first addresses the applicability of the limitation of liability clause contained in the contract to the Parties' dispute. A contract "must be construed according to its own clear and unambiguous terms and applied as written, absent an ambiguity or some illegality." Tammy E. Hinshaw, et al., 11 FLA. JUR 2D CONTRACTS § 154 (February 2018) (*citing* Avis Rent A Car System, Inc. v. Monroe Cty., 660 So. 2d 413 (Fla. 3d DCA 1995); McEnally v. Pioneer Woodlawn Utilities, Inc. By and Through Bd. of Cty. Com'rs, 587 So. 2d 623 (Fla. 1st DCA 1991); and Hussmann Corp. v. UPS Truck Leasing, Inc., 549 So. 2d 215 (Fla. 5th DCA 1989)). Construing the contract in accordance with its clear terms, this Court notes that each statement in the limitation of liability clause begins with the phrase, "[e]xcept for indemnity obligations under this Agreement." The inclusion of this phrase clearly counters defendant's argument that the limitation of liability clause excludes any liability for consequential damages that may be available under the indemnity clause. I further note that, contrary to plaintiff's claim, the

5

limitation of liability clause is not ambiguous: the first sentence limits the type of damages that may be awarded to direct damages, while the second sentence sets the total aggregate liability for direct damages at the contract price, while excluding any damages available under the indemnity clause. Given the clear language carving out indemnity obligations, I hold that the limitation of liability clause is inapplicable to construing the indemnity obligations plaintiff seeks under the contract.

### III. The Indemnity Clause

Indemnity provisions are subject to the general rules of contract construction. Dade Cty. Sch. Bd. at 643. The cardinal rule of contract construction is that "[w]here the language chosen by the parties, given its ordinary and natural meaning unambiguously manifests [the parties'] intention, the judicial task is at an end." J.A. Jones Const. Co. v. Zack Co., 232 So.2d 447, 449-50 (Fla. 3rd DCA 1970) (*citing* McGhee Interests v. Alexander Nat'l Bank, 102 Fla. 140 (Fla. 1931)). A provision in a contract is ambiguous if it "is reasonably susceptible to more than one interpretation." Warwick Corp. v. Turetsky, 227 So.3d 621, 624 (Fla. 4th DCA 2017). A patent ambiguity is apparent "due to 'the use of defective, obscure, or insensible language.'" Nationstar Mortgage Co. v. Levine, 216 So.3d 711, 715 (Fla. 4th DCA 2017). If the wording in a contract "is ambiguous, and the parties present different reasonable interpretations then 'the issue of proper interpretation can become one of fact, thus precluding summary judgment.'" *Id.* at 714.

Interpreting the indemnity provision, this Court notes first that the obligation to indemnify is mirrored between the Parties by analogous obligations for CCWF and WindLogics. Both Parties' obligations are to "indemnify and hold" the counterparty "harmless from and against liability or loss." The phrase "liability or loss" is not modified by terms typical for an indemnity clause, such as "any and all," an antecedent phrase such as "which arise out of, relate

6

to, or result from any act or omission of the Contractor," or other words of clarification like "in connection with the performance of this contract." Following the phrase "from and against liability or loss," both statements in the indemnity clause simply list the type of intellectual property claims that may be included in such "liability or loss": each statement continues with "including all reasonable costs, expenses, and attorneys' fees, claims, suits or judgments in connection with alleged infringements of patens [sic], registered copyrighted or unregistered copyrighted works, trade secrets, patented or un-patented inventions, articles or appliances, or claims thereof." Any mention of WindLogics' provision of services under the contract is tied to intellectual property rights. There is no language included in either statement, then, that clarifies the scope of the "liability or loss" for which each party should indemnify the other. While this would undoubtedly be liability or losses that are legally cognizable, it is unclear, from the current drafting, whether each party even limited its potential indemnification to liability or losses under the contract.

A line of decisions in Florida courts holds that, "[w]hen an indemnity agreement is reasonably susceptible of two equally fair interpretations, one which will provide indemnity and one which will deny it, the interpretation which provides liability must be applied." Maule Indus., Inc. v. Central Rigging & Contracting Corp., 323 So.2d 631, 632 (Fla. 3rd DCA 1975). However, these decisions are in the context of indemnity provisions governed by § 725.06 Fla. Stat., which sets forth requirements for one party to indemnify another for the second party's negligence. At the time of these decisions, § 725.06 required the party indemnified to provide consideration for such indemnification. This is distinct from the current case, in which the parties are obligated by mirror provisions to indemnify one another, no additional consideration appears

to have been paid for such indemnification, and the contract is not otherwise governed by § 725.06 Fla. Stat.

Although it is not within this Court's purview to revise careless drafting, I also note that both CCWF's and WindLogics' obligations contain grammatical errors, such as a missing comma between "directors" and "shareholders" and the misspelling of "patents," suggesting that such errors may have been introduced during negotiation by the parties. Indeed, there is an outstanding issue of fact regarding the extent to which the terms and conditions were negotiated: the plaintiff alleges that WindLogics drafted the standard terms and conditions, while the defendant contends that the parties negotiated and amended the agreement on multiple occasions. While this contract is not so bespoke as to warrant fully negotiated terms, the disagreement between the parties and mistakes in language render this Court incapable of holding as a matter of law that those terms were not negotiated.

This Court therefore determines that the indemnity clause is ambiguous. When a provision in a contract is ambiguous

> or obscure in its terms, so that the contractual intention of the parties cannot be understood from a mere inspection of the instrument, extrinsic evidence of the subject-matter of the contract, of the relations of the parties to each other, and of the facts and circumstances surrounding them when they entered into the contract may be received to enable the court to make a proper interpretation of the instrument. L'Engle v. Scottish Union & Nat. Fire Ins. Co., 48 Fla. 82, 95 (Fla. 1904) (internal citations omitted).

Such contractual interpretation requires determination of issues of fact that are not suitable for summary judgment. Moreover, this Court declines at this stage to extend the contra proferentem rule for the sake of summary judgment in the instant case. Where, as here, parties are of equal bargaining power, "[t]he 'contra proferentem' rule is used less frequently." Philip L. Bruner & Patrick J. O'Connor, Jr., 1A BRUNER & O'CONNOR CONSTRUCTION LAW § 3:59 (August

2017). This principle "is a rule of last resort" and is "inapplicable when there is evidence of the parties' intent at the time they entered into the contract." Gogoleva v. Soffer, 187 So. 3d 268, 275 (Fla. 3d DCA 2016). In order to construe an ambiguous term against a drafter, then, evidence of the parties' intent must first be considered. Finally, where ambiguous language has been drafted during negotiation, as may be the case here, courts are less likely to allow either party to use the rule. *See, e.g.*, Ralph C. Nash, Jr. & Steven W. Feldman, 1 GOVERNMENT CONTRACT CHANGES § 11:19 (June 2017). For these reasons, while I hold that the indemnity clause is ambiguous, I will not rule, as a matter of summary judgment, that such indemnity should be construed against the defendant, nor does this decision otherwise determine the parties' intentions in drafting the indemnity clause.

## ORDER

Now, therefore,

IT IS ORDERED:

1. Plaintiff's motion for partial summary judgment, Doc. 15, 18, and 28, is denied in part and granted in part. The Court holds that the indemnity clause in the contract is ambiguous and that the limitation of liability clause is inapplicable to the losses at issue. However, the Court does not determine at this stage whether the loss alleged in this case falls within the coverage of the indemnity clause.

2. Defendant's motion for summary judgment, Doc. 22 and 24, is denied.

Dated this 20th day of April, 2018.

BY THE COURT:

*[signature: Charles B Kornmann]*

CHARLES B. KORNMANN
United States District Judge